JOHN BRIGHTMAN *vs.* DANIEL B. EDDY.

If the judge presiding at a trial submits the case to the jury under instructions which permit them to find a verdict which the evidence is not sufficient to sustain, the other party is entitled to a new trial, although the instructions, as an abstract proposition were accurate.

The master of a schooner, immediately on landing at Matamoras in Mexico late in December 1864, was informed by the consignee of the cargo that he had information that there was a rebel plot to seize and destroy the schooner, and that the only way to save it was by transferring it to a British subject. There were other vessels in port belonging to citizens of the United States, and there was a United States' gunboat only ten or twelve miles distant, but he took no measures for protection other than such transfer

In an action against him for unlawful conversion of the vessel, it not appearing that the information of the consignee was true or the peril was in fact threatened, *Held*, that the facts were not sufficient to justify the master in taking steps, by advice of the consignee, at the time of the information, to cause the vessel to be so transferred, and in completing the transfer sixteen days afterwards, although he was himself a part owner, and although it appeared that a vessel belonging to citizens of the United States had been destroyed at that port in September previous, and there was evidence tending to show that another had been destroyed there during the same month of December.

TORT for conversion of one sixteenth of the schooner Jessie A. Woodhouse. In the superior court *Morton*, J., signed a bill of exceptions substantially as follows:

At the trial it was agreed that the plaintiff was owner of a sixteenth of the vessel; that the defendant, being master and also part owner, at Matamoras, in January 1865, transferred the vessel, without the knowledge or consent of the plaintiff, to one John McNulty, a British subject, for the purpose of putting it under British colors; that it remains under British colors, and under the command of the defendant; and that in October, 1866, the plaintiff made a demand on the defendant for payment of the value of his sixteenth, and the defendant refused to pay for it.

The defendant offered evidence tending to show that he arrived at Matamoras in the latter part of December 1864, with a cargo of lumber consigned to a firm of which one Henry M. Keith was a member, and on arrival reported immediately to his consignees, and while on shore was informed by Keith that he had information of a rebel plot to capture and destroy the schooner, and that the only way to save the vessel was to put it under British colors; that the defendant at first objected, but afterwards, on the representations and in consequence of the information and advice given by Keith, took steps to cause the vessel to be transferred to McNulty; and that a British flag was procured by Keith and taken on board as soon as the master could get there. And the defendant testified that as soon as he got on board he raised the flag with his own hands, and soon afterwards the schooner dropped down from United States' waters into Mexican waters " near a British national vessel lying there for security ;" that the transfer was completed

on or about January 16, 1865, and at the same time the defendant took from McNulty a power of attorney, giving him full control over the vessel with authority to convey; and that McNulty has since exercised no act of ownership. And Keith and the defendant both testified that they did not consider that the vessel would have been of any value if it had remained under the United States' flag; and by Keith's testimony it appeared that "an American vessel" had been destroyed there in September 1864; and there was some evidence tending to show that another had been destroyed there in December.

But the mate, and a seaman who was on board, testified that they did not see any flag raised by the defendant when he returned to the vessel; that there were other "American vessels" lying there; and that, so far as they knew, there was no danger; and it further appeared that there was a United States' gunboat at Brazos Santiago, ten or twelve miles distant; and there was no testimony to show that the defendant made any effort to obtain assistance, or took any steps to prevent the destruction of the vessel, other than those recited.

On this evidence the defendant contended that if the master made the transfer, under a controlling and extreme necessity, for the purpose of preserving the vessel for the interest of all concerned, he had authority in law to make it, and the action could not be maintained; and the judge so instructed the jury.

A verdict was returned for the defendant; and the plaintiff alleged exceptions.

*J. M. Morton, Jr.*, for the plaintiff.

*G. Marston & W. A. White*, for the defendant.

BIGELOW, C. J. The rule of law regulating the authority of a master to sell a vessel under his command is stated with its proper limitations in *Gordon* v. *Massachusetts Insurance Co.* 2 Pick. 249; *Hall* v. *Franklin Insurance Co.* 9 Pick. 466, 477; and in several subsequent cases decided by this court, in which the original statement of the rule has been recognized and confirmed. On a consideration of the facts disclosed at the trial of this case which are fully set forth in the exceptions, we are clearly of opinion that they fail to show the existence of any such

necessity as to justify the defendant in making sale of the plaintiff's share of the schooner. The vessel had sustained no damage; nor does it appear that she would have encountered any peril if the sale had not been made. All that is shown is, the master had information that the vessel was liable to capture. It does not even appear that this information was true or that the alleged peril was in fact threatened. And there is evidence which tends to show that there was no actual danger of capture or seizure. On this state of facts, we cannot doubt that the evidence was wholly insufficient in law to warrant a verdict in favor of the defendant on the ground that the act of sale of the vessel was justifiable. Our only difficulty has been in determining whether the plaintiff is entitled to a new trial of the case on his exceptions as they stand. The instruction given to the jury was accurate as an abstract proposition. It contains a substantially correct statement of the rule of law as to the authority of the master to sell the vessel. The error, if any, consists in the omission of the court to tell the jury that there was no evidence which in law would warrant a verdict for the defendant on the ground stated in the instruction. But no such instruction appears to have been asked by the plaintiff. If such request had been made, it would have been the duty of the judge to have granted it, and his failure to do so would have been a valid ground of exception. A party has a right to ask the court to rule upon the legal effect of evidence. *Denny* v. *Williams*, 5 Allen, 1. We are also of opinion, after careful consideration, that there are cases in which it is the duty of this court to set aside a verdict for an omission to give an instruction, although no request for specific direction was made at the time. This should be the rule whenever it clearly appears by a bill of exceptions that a party has failed to offer evidence sufficient in law to prove his case. The reason is, that, if the judge gives an instruction which leaves the jury at liberty to find a verdict which the law will not support, he by implication leads them to infer that the rule of law is different from what it really is as applicable to the case on trial, and thereby commits an error quite as palpable and as detrimental to the rights of one party to the

suit, as if he had given an instruction which was absolutely erroneous in point of law; and this is the rule laid down in *Pond* v. *Williams*, 1 Gray, 630, 634.

On the ground, therefore, that the judge submitted to the jury a case under instructions which permitted them to find a verdict for a party who had not offered evidence sufficient in law to sustain one in his favor, we are of opinion that a new trial must be had.                              *Exceptions sustained.*