# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF ESSEX, NOVEMBER TERM 1869, AT SALEM.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr., ⎫
Hon. JOHN WELLS, ⎪
Hon. JAMES D. COLT, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

## Eliza J. Markey vs. Mutual Benefit Life Insurance Company.

Oral testimony will not legitimately establish a proposition of fact which cannot, by any mode of interpretation, be deduced from the words themselves when written; whatever may have been the appearance, look, manner, mode of answering, emphasis, accents and gesticulations of the witnesses.

At an interview with an applicant for a policy of insurance on his own life for his wife's benefit, an agent of the insurance company said that he had brought the policy, and the applicant replied that he was glad of it and that he had been expecting it for some time, took it from the agent, looked at it, passed it to his wife, saying " Here, wife, here is your policy," and she then took it and looked it over. The applicant then said to the agent, that he was not well enough to attend to the business that day, but had made arrangements with J. S. to " do it " for him, or to " take the policy;" and to his wife, that there was money due to him in the shop where he worked, and J. S. would " pay it for him " or " make arrangements to get it for him." After some more words between the appli

cant and the agent, the latter arose to leave, saying that he should go to J. S.; and the wife, saying that he might want the policy if he was going to J. S., passed the policy to him, and he took it, withdrew with it, and, without applying to J. S. in relation to it, returned it to the general agent of the insurers, through whom he had received it from them, and on whom the next day the applicant made a demand for it, with a tender of the premium, which was refused. *Held,* that evidence of these facts would not warrant a finding of a delivery of the policy, either actual or constructive, and a waiver or postponement of payment of the premium; or of an open and continuing proposal to contract with the applicant by means of that policy, accepted by his tender and demand.

On an issue of the binding force on the defendants, who were a foreign mutual life insurance company, of transactions had by agents of the company in this Commonwealth with the plaintiff and her husband, in reference to a policy of insurance on his life for her benefit, for which he had applied to the company, instructions and rules of the company, not referred to in the application or the policy, nor notified to him or to her, are inadmissible to prove limitations of the agents' authority.

Power to make contracts or declarations to bind generally a foreign mutual life insurance company is not within the apparent scope of the authority of a sub-agent employed by the general agent of the company in this Commonwealth to solicit and receive applications for insurance and forward them to the company, and to deliver policies issued by the company and collect premiums thereon; nor is to be inferred by virtue of the St. of 1861, *c.* 170, or the St. of 1864, *c.* 114.

CONTRACT on a policy of insurance by the defendants of the life of the plaintiff's former husband, James W. Hoyt, in the sum of $3000 payable on his death to the plaintiff. The answer denied the completion of any contract of insurance. This is the same action a previous stage of which was reported 98 Mass. 539, under the name of *Hoyt* v. *Mutual Benefit Insurance Co.*, the plaintiff having originally sued under her name of Eliza J. Hoyt, but now being remarried.

At the new trial, before *Lord,* J., the following facts appeared, on the evidence, not to be in dispute : The defendants were a mutual life insurance company under the laws of New Jersey and having their principal office at Newark in that state. William H. S. Jordan was in 1865 their general agent in Massachusetts, and accepted his agency with power to appoint sub-agents and subject to certain written " instructions and rules of the company, for agencies," established by the directors. Charles F. Wells was a sub-agent appointed by Jordan to solicit and receive applications for insurance and forward them to the company, and to deliver policies issued by the company and collect premiums thereon. By the solicitation of Wells, James W. Hoyt, the plaintiff's husband, under date of September 21,

1865, made application through Wells to the defendants for such a policy as the one in suit. This application was forwarded by Wells, through Jordan, to the defendants' office in Newark, from which office, in reply, the policy in suit was sent to Jordan, who early in November handed it to Wells, and Wells on November 4 or 5, having it in his possession, had an interview with Hoyt and the plaintiff, at Ballardvale, at which no other person was present. Hoyt was then ill with typhoid fever, and was lying on his bed. At the close of the interview, Wells withdrew with the policy in his possession, and afterwards returned it to Jordan, who sent it back to the defendants. On the day after the interview, a tender of the premium and demand for the policy were made in Hoyt's behalf at Jordan's office in Boston, and were refused on the ground of Hoyt's illness. He died of the fever on November 23. The plaintiff contended that at the interview there was a valid delivery of the policy to the assured, and an agreement, by Wells, as the defendants' agent, to defer payment of the premium and to apply for it to Francis L. Banks, the foreman of the room in a file-factory in which Hoyt was a workman. But it did not appear that Wells ever made such an application to Banks. The plaintiff testified, as a witness, to what occurred at the interview; and Wells gave conflicting testimony in behalf of the defendants. The substance of the testimony of both of them, and the language of the material part of the plaintiff's testimony, are stated in the opinion. There were several other witnesses, including Jordan.

In the course of the trial the judge ruled " that, *primâ facie*, under the circumstances, Wells was agent of the company, with power to contract in their behalf and act in their behalf; that any limitation of that agency must be shown either by some reference to it in the application or policy, or by some communication of the fact to the party previous to the contract being entered into." The defendants afterwards " offered in evidence a paper containing the appointment of Jordan by the company as agent, also the 'instructions and rules of the company, for agencies,' the copy of which Jordan had signed and agreed in

writing to comply with upon accepting the agency. The judge asked the defendants' counsel whether it was claimed that the application and policy contained any reference to any limitation of authority on the part of the agent, or whether the plaintiff had in any manner notice of any limitation, remarking that if there was any such limitation he should admit the evidence, but in the absence of all such notice he should regard the statutes of the Commonwealth respecting agents of foreign insurance companies as making them [namely, Jordan and Wells] at least *primâ facie* authorized agents to do what they did in behalf of the company. The counsel stated that there was no limitation in the application or policy, except the recital of payment of premium, and there was no notice to the plaintiff of any limitation. Thereupon the judge refused to allow evidence of limitations of the power of an agent."

At the close of the evidence, and before the arguments of the counsel, the judge said : " I shall rule in this case that there is no evidence to warrant the jury in finding that there was any other agreement between the parties than that of a contract of insurance in the ordinary mode by a policy of insurance ; " and " I shall then rule that, in order to constitute a valid contract, there must be either a delivery or its equivalent; that, in the absence of that, there must have been a tender of the premium, and a demand for the policy, at a time within a reasonable time, under the circumstances, from the acceptance by the company of the proposition of the assured for insurance; that if, within a reasonable time, under the circumstances, after their acceptance of that policy, with nothing new transpiring which they had not full knowledge of, if the party tendered the premium and demanded a policy, that vested the right of the policy in the assured. I think there is evidence on these two questions to go to the jury."

The judge afterwards refused a request of the defendants for a ruling " that there was no sufficient evidence upon which the jury could find a verdict for the plaintiff; " and submitted the case to the jury under instructions substantially as follows :

" The question which you are to pass upon is, whether the plaintiff is entitled to recover at all. Upon that matter I instruct you, as matter of law, that she is not entitled to recover, unless there was a policy made and delivered within the lifetime of Hoyt, or such acts done as are in law equivalent to a delivery of the policy.

" Under the law of this Commonwealth, in my view, a person soliciting applications for a foreign insurance company, with the knowledge of the company, is to be deemed to be an agent of the company, with authority to do the acts which he does; but this authority may be limited by the company, if either the application or the policy contains any notice of that limitation, or if the party with whom the agent contracts is in any way notified of the limitation. In the absence of any such reference to the limitation of his authority, in the absence of any such communication to the party, or, rather, in the absence of any such knowledge, on the part of the contracting party, of such limitation, he is to be taken to be authorized to do what he does.

" The plaintiff claims that, after this application had been made and approved and the policy had been made, for the purpose of delivery under it, (about which facts no controversy is made,) there was in point of fact a delivery. If there was a delivery, then the policy is valid and the plaintiff is entitled to recover. The mere passing of the paper to Hoyt, and his passing it to his wife, does not, in law, of itself constitute a delivery. If it was passed for the purpose of giving the property to the assured, and accepted as such, that is a delivery. If it was originally put into the hands of the assured, without any purpose of passing the property; if while in her hands an arrangement was made by which the parties understood that the property was from that time forward to be in her, and the policy to be subject to her power, control and disposal, that would make a valid delivery in law. Where a contract of this kind is made, the presumption is, that the consideration for it, (which is the premium, in this case,) and the delivery of the policy, are dependent upon each other. But although there is that presumption in the law, yet the parties may act differently from that

and if the authorized agent intends to deliver and does deliver the policy into the hands of the assured ; or if, it being in her hands, he intends that she retain it, and she does retain it as her own, without a cash payment of the premium, then the policy becomes a valid contract, even although the cash premium be not paid. If the policy is obtained, or the retention of it is allowed, upon a statement of the assured in relation to the mode in which payment of a premium can be recovered, which is not true, and the party makes the delivery, or suffers it to be retained, supposing it to be true, then, when he ascertains, or if the fact is, that it is not true, there is not a delivery of the policy. But if the party understandingly permits the policy to go into the hands of the assured, for the purpose of vesting the property, he knowing at the time that he is to look elsewhere for the payment of it, the delivery is a valid delivery, in the absence of all misrepresentation, or fraud, or falsehood. Now I do not propose to intimate to you in the slightest degree whether I think the evidence in this case is plenary for you to find a delivery, nor whether I think the evidence is altogether too slight for you to find it. It is your province to settle, first, what the evidence is ; next, what are the proper and reasonable deductions which you are to make from that evidence; and, it being your province, I do not propose to interfere with it. If upon these principles the evidence satisfies you that there was a delivery of that policy at that time, then the plaintiff is entitled to recover. If it does not so satisfy your minds, then upon this branch of the case she is not entitled to recover; and it will be necessary for you to go further.

" I have stated what I understand, by the law of this Commonwealth, to be the power of an agent of a foreign corporation. And inasmuch as it is not claimed here that there was any limitation of the agency, within the principle which I have stated, then you will deal with Wells's conduct as with the conduct of an authorized agent of the company. And if, that authorized agent of the company having notified the assured that the policy was made and ready for delivery, the assured declined to take it, there is an end of the contract, and the party

cannot recover upon it under any circumstances whatever that are proved in this case. But if, having notified the assured that the policy was ready, and if, on an interview between them, it was mutually understood that it was not convenient on that day to consummate the contract by the payment of the premium on delivery of the policy, but that the contract had not been abandoned by either party, and both parties understood that it was still a contract which might be completed, if then, within a reasonable time — and in law the next day would be a reasonable time — if then, within a reasonable time, there being in the mean time no change whatever in the circumstances, if the party had not become sicker, or the risk increased, or any other fact transpired which changed at all the condition of things from what it was the day before, then a tender of the premium and demand of the policy upon the duly authorized agent of the company will be sufficient to vest the right of the policy in the plaintiff. Whether there is any such proof is for you to determine; or rather, not whether there is any — whether there is any sufficient proof, it is for you to determine. Because, if there was no evidence whatever on the subject, I should rule as matter of law that it was not a matter to be submitted to you. But there being evidence which bears upon that subject, I submit it to your consideration. If it satisfies your minds that it establishes the right of the plaintiff, then you will return a verdict for the plaintiff for the amount claimed.

" You will then upon all the evidence in the case determine whether, upon either of the grounds I have named, the plaintiff has shown that she has a right to recover under this policy. If she has a right to recover at all, it is the amount of the policy with interest. But if she has failed — and the burden is upon her — if she has failed to satisfy your minds reasonably upon either of the propositions, then it will be your duty to return a general verdict for the defendants."

The jury found for the plaintiff, and the defendants alleged exceptions on three questions specified as follows :

" Was there evidence proper to submit to the jury upon the question whether there was a delivery of the policy? "

" Was there evidence proper to submit to the jury upon the question whether, after an agreement had been entered into by application on the one side, acceptance of the application and making of the policy on the other, there was, within a reasonable time, a tender of the premium and demand for the policy which would vest the right to the policy in the plaintiff? "

" Was it competent to the defendants to show the nature, extent or limitations of the agent's authority, as offered ? "

The bill of exceptions contained a stenographic report of all the testimony, following which was this paragraph :

" The above may be regarded as all the language used by the witnesses in giving their testimony; but the presiding judge does not deem it to be all the evidence. There was a question of mutual intent between two of the witnesses, under circumstances which at the time were very different from those which existed at the time of the trial. On many questions, but especially on the question of mutual intent, the presiding judge is of opinion that not only are the words of the witness evidence, but that the appearance, look, manner, mode of answering, emphasis, accents, gesticulations, &c., are all proper matters of evidence to the jury, which no attempt is made to report, and which cannot be reported, and therefore the presiding judge does not report the foregoing as all the evidence. In his own opinion, the facts stated, taken in connection with the appearance, bearing and manner of the witnesses, were proper to be submitted to the jury for their decision."

*W. C. Endicott & C. W. Loring,* for the defendants.

*J. W. Perry & D. Saunders,* for the plaintiff.

WELLS, J.    This case was presented to the jury, in the superior court, under instructions that, as matter of law, the plaintiff " is not entitled to recover, unless there was a policy made and delivered within the lifetime of Hoyt, or such acts done as are in law equivalent to a delivery of the policy." Previously to the arguments of counsel, the judge had announced his rulings, " that there is no evidence to warrant the jury in finding that there was any other agreement between the parties than that of a contract of insurance in the ordinary mode by a policy of in-

surance;" and that, "in order to constitute a valid contract there must be either a delivery or its equivalent." The questions raised upon the exceptions must therefore be considered here entirely in reference to that aspect of the case.

1. Upon the point of delivery of the policy, either actual or constructive, the questions presented differ in some respects from those at the former hearing in this court. 98 Mass. 539. There was then no evidence of any change of manual possession of the policy. As there was no evidence or pretence of any understanding, on either side, that the policy was to be delivered without payment of the premium, it was held that instructions could not be sustained, which authorized the jury to find that an agreement of Wells, at the request or suggestion of Hoyt, that he would go to another person at another place in order to obtain the money for the premium, with an understanding by both " that nothing more was to be done by Hoyt, and nothing remained except for Wells to call for the premium from Banks," and the neglect of Wells thus to call for the premium, were equivalent to a delivery of the policy. Upon a careful revision of that case, we are entirely satisfied with the conclusion to which we then came. Regarding Wells as the agent of the defendants " to all intents and purposes," yet the particular service which he undertook, by virtue of the supposed agreement, was in behalf of Hoyt, and to enable him to complete the contract on his part. It was not an undertaking within the apparent scope of his business as agent of the insurance company. We are not prepared to say that, if he had been principal instead of agent, the result would have been different as the question was then presented.

So far as the case depends upon the arrangement in regard to procuring payment of the premium from Banks, it stands now less strongly, upon the testimony, than at the former trial. That arrangement is therefore material only in its bearing upon the question whether there was a delivery to Hoyt or his wife, at their own house, upon credit; or a waiver of the immediate payment of the premium as a condition of the transfer of title to the policy.

Upon this question, the instructions given to the jury at the last trial are full, explicit and clear in their terms. We see no ground of exception to them, on account of anything which they contain. But it is not enough that the instructions are complete and accurate in themselves, as a statement of law, if they permit a jury to return a verdict·upon facts which will not in law justify such a verdict. The correctness of instructions must be tested by the facts to which the jury are required to apply them. *Brightman* v. *Eddy*, 97 Mass. 478. *Pond* v. *Williams*, 1 Gray, 630. Besides, the question whether there was sufficient evidence to warrant a verdict for the plaintiff was distinctly raised at the trial. It is necessary therefore to determine that question by an examination of the testimony.

The only witnesses, whose testimony bears upon this point, are the plaintiff herself, and Wells, the insurance agent. No one else was present at the time of the alleged delivery, except Hoyt, the deceased. Whether there was a delivery, understood by both and intended to pass the title in the policy presently to Mrs. Hoyt, and a postponement of the payment of the premium until some indefinite future time, or until Wells should call upon Banks for it, must depend upon the facts and occurrences of that interview as narrated by these witnesses. In such an inquiry we must take the testimony as the jury would have a right to regard it, giving to all the statements of Mrs. Hoyt the construction most favorable to her ; and, in case the testimony of Wells conflicts with hers, rejecting it altogether, or considering it only so far as it may, in·any particular, seem to support the positions of the plaintiff's case.

We are to keep in mind that we have before us only the bare words in which the testimony of the witness was given ; whereas the living witness was before the jury, affording them the opportunity to judge, not only of the credit to be given to the witness, but also of the force of the words used, and the precise meaning they were intended to convey, so far as the tones and inflections ot the voice, the manner and appearance of the witness, and his or her mode of testifying could affect the force and meaning of the words uttered. This consideration always has weight in

determining whether a verdict ought to be sustained upon the testimony reported. But the language of the witness is the proper vehicle of his thought. Much may be inferred against an adverse witness, different from the obvious meaning of his words. But an affirmative proposition of fact, which a party is bound to establish, will not be presumed to have been established without some testimony tending directly to its support. Testimony delivered orally will not legitimately establish a proposition of fact which cannot, by any mode of interpretation, be deduced from the words themselves when written. Although " the appearance, look, manner, mode of answering, emphasis, accents, gesticulations, &c., are all proper matters of evidence to the jury," (that is, to aid in the interpretation of the testimony,) and although these cannot be reported, yet when the report does contain " all the language used by the witnesses in giving their testimony," the question of law is properly raised whether the verdict can stand upon that testimony.

Recurring to the testimony, the statement of the plaintiff in regard to the interview between Wells, Hoyt and herself, when the policy is claimed to have been delivered, is, in brief, this. " He came in ; my husband was on the bed; he (Wells) made some commonplace remark, and then said to my husband, ' I have brought your policy.' My husband said he was very glad of it; he had been expecting it for some time. He took it and looked at it, and passed it to me and said, ' Here, Eliza, here is your policy.' I took it in my hands and glanced it over ; and he then said, ' Mr. Wells, I am not feeling well enough to attend to this business to-day ; but I have made arrangements with Mr. Banks to do it for me.' Well, Mr. Wells said that he would go. They had some more conversation. I could not justly remember about the other things; and he arose to go, and I passed him the paper as he arose to go out of the room, and he went over there, or said he would go to Mr. Banks." To the question, " What was said when you passed him the policy ? " she answered, " He took the policy, and said he should go to Mr. Banks." *Q.* " Did you say anything ? " *Ans.* " I passed him the policy, and said I, ' You may want the policy if you

Markey *v.* Mutual Benefit Insurance Company.

are going to Mr. Banks.' And he took the policy." *Q.* " Did
he ask for it?" *Ans.* "No, sir, he did not." *Q.* "Did your
husband state to him what arrangements he had made with
Mr. Banks about the policy?" *Ans.* "No, sir, anything more
than that he had made arrangements with him to take the pol-
icy." *Q.* "Was anything said about paying for the policy?"
*Ans.* "Oh, yes." *Q.* "What was said about it?" *Ans.* "Well,
he told me that there was money, — that his money was in the
shop, his money that he hadn't drawn, and Mr. Banks would
pay for it for him." *Q.* "That is, he said that there was money
for him in the shop that he hadn't drawn?" *Ans.* "Money
owed to him." *Q.* "Owed to him, and Mr. Banks would make
arrangement to get it for him?" *Ans.* "Yes, sir."

The cross-examination does not add anything to the force or
significance of the plaintiff's direct testimony, as above given.

The obvious purport of this testimony, and, as we think, the
only legal conclusion that can properly be drawn from it, is, that
the policy was handed to Hoyt and his wife for their inspection
only, to enable them to determine whether to accept it and pay
the premium.    At most, it was a mere proffer of the instrument
which contained the contract; requiring, upon the other side,
acceptance and payment of the premium to give it legal opera-
tion and effect as a contract.    The judge rightly instructed the
jury that the presumption of law was that the payment of the
premium and the delivery of the policy were dependent upon
each other.    To our minds, the testimony utterly fails to show,
or to give the jury any ground for inference, that Wells intended,
or that either Hoyt or his wife understood, that the policy be-
came her property by reason of what occurred at that interview.
The mere act of passing the manual possession, under the cir-
cumstances, does not vest the legal possession in her, nor prove
that it was intended to do so; and the jury could not find a
verdict for the plaintiff from that fact alone.    *Commonwealth* v.
*O'Malley*, 97 Mass. 584.    *Phelps* v. *Willard*, 16 Pick. 29.

This being so, the burden is upon the plaintiff to show, by
some affirmative evidence, that the real intention and under
standing was so to pass the legal title and possession without or

before payment of the premium. Not only do the acts and words of the parties, at this interview, fail to furnish such affirmative evidence, but, as it appears to us, they exclude such an inference. Hoyt, feeling too unwell to attend to the business himself, refers Wells to Mr. Banks to do it for him. Wells takes the policy and leaves the house. We cannot conceive of any emphasis, gesticulation or other indication in the appearance and manner of the witness upon the stand, which can make the plaintiff's testimony, containing this statement, convey or consist with the idea that the parties intended or understood that the delivery of the policy was nevertheless complete and absolute and only the payment of the premium postponed.

The testimony of Wells is in utter denial of any delivery, or any arrangement about going to Banks for the premium; and asserts that Hoyt declined to take the policy. We can discover in it nothing which tends to support the plaintiff's case; and the utmost effect of his appearance upon the stand would be to discredit his statements altogether.

Upon these considerations, the court are clearly of opinion that the jury were not warranted by the testimony in returning a verdict for the plaintiff upon the ground of a delivery, actual or constructive, of the policy; and that the instructions permitting them so to return a verdict were, for that reason, erroneously given.

2. There is another ground upon which the verdict may have been rendered, and which may become important at another trial. It is necessary, therefore, to consider it now. The judge instructed the jury, in regard to the proffer of the policy by Wells and the subsequent tender of the premium, as follows: " If, having notified the assured that the policy was ready, and if, on an interview between them, it was mutually understood that it was not convenient on that day to consummate the contract by the payment of the premium on delivery of the policy, but the contract had not been abandoned by either party, and both parties understood that it was still a contract which might be completed; if then, within a reasonable time — and in law the next day would be a reasonable time — there being in the

Markey *v.* Mutual Benefit Insurance Company.

mean time no change whatever in the circumstances, **if the**
party had not become sicker, or the risk increased, or any other
fact transpired which changed at all the condition of things from
what it was the day before, then a tender of the premium
and demand of the policy upon the duly authorized agent of
the company will be sufficient to vest the right of the policy in
the plaintiff."

This instruction seems to imply that there was evidence from
which the jury might find that there was a contract to insure,
independent of the policy, which, if not abandoned by the plain-
tiff, or forfeited by refusal or neglect to pay the premium, would
bind the defendants to insure and to deliver a policy of insur-
ance upon such payment or tender of payment. But the judge
had previously ruled that there was no evidence to warrant the
jury in finding such a contract. The case had been argued to
the jury by the counsel, upon the basis of that ruling. We
have no occasion, therefore, to examine the testimony to see
whether there was in fact such evidence or not. If the jury un-
derstood the instruction in this sense, as we think they were lia-
ble to do, its tendency would be to mislead them in their con-
clusions.

That previous ruling must be held to exclude also the propo-
sition that a contract, binding upon the defendant, had arisen
from the acceptance of the plaintiff's application for insurance,
such acceptance being proved by the making of the written pol-
icy, sending it to Wells for delivery, and the offer of delivery by
him.

We are inclined, however, to interpret this instruction as in-
tended to be in conformity with the previous ruling. In that
view, the proposition we suppose to be substantially this, namely,
that the proffer of the policy by Wells, he being fully aware of
the condition of health in which Hoyt then was, and not with-
drawing it at that interview or then intending to withdraw it,
remained an open and continuing proposal to contract by means
of that policy, which entitled the plaintiff to accept it within a
reasonable time, and, by paying or tendering the premium, to
demand the policy ; and that such payment or tender and de-
mand would be equivalent to an actual delivery.

We cannot so hold the law to be. There being previously negotiations, but no contract, and no purpose to contract otherwise than by a policy made and delivered upon simultaneous payment of premium, the proffer of a policy, even if intended as an offer which was to continue open for acceptance within a reasonable time, would become a contract only by acceptance before it was withdrawn. And it might be withdrawn at any time before it was' actually accepted, whether the reasonable time had elapsed or not. One party is not bound by such a proposal until the other is bound by its acceptance.

The return of the policy by Wells to the general office in Boston, of which it is apparent that the plaintiff had knowledge, was evidence of such a withdrawal, competent at least to be submitted to the consideration of the jury upon that question. But, further than that, we see no evidence that the offer of the policy by Wells, at the interview in Hoyt's house, was to remain open for acceptance after that interview was ended, except under the special arrangement for doing the business with Banks, of which Mrs. Hoyt testifies; and that arrangement was terminated by the failure of Wells. to renew the offer to Banks. In the absence of anything in the terms or mode of the offer to indicate that it contemplates a future acceptance, the presumption is that it terminates with the interview at which it is made.

In the aspect of the case upon which it was submitted to the jury, we think that the instructions in regard to the effect of a tender of the premium in Boston to vest the right of the policy in the plaintiff were not correct.

3. We have considered the questions thus far without regard to any supposed limitations upon the authority of the agents, Jordan and Wells. The defendants proposed to show such limitations by certain "instructions and rules of the company, for agencies." It not being shown or claimed that the application or policy contained any reference to such limitations, or that the plaintiff had in any manner notice thereof, the court properly excluded the evidence. The authority of an agent must be determined by the nature of his business and the apparent scope of his employment therein. It cannot be narrowed by private

or undisclosed instructions, unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers.

On the other hand, it does not follow, from the fact that a man is shown to be agent for another or for a corporation, that his principal is bound by all that he does. There are limitations which grow out of the very law of agency. In the first place, the act must appear to be an act of agency, that is, done in behalf of the principal. In the case of corporations created for a special purpose or engaged in a special business, the authority of the agent will be presumed to be limited by the nature of that purpose or business. So, too, the authority of every agent will be presumed to be limited by the apparent scope of the particular employment or branch of the general business of his principal in and for which he is engaged; and all who deal with him in that relation are affected by such apparent limit of employment and powers.

In this case, the authority of Jordan must be taken to be limited to the business of insurance; and, within that business, by whatever of restriction the fact that his principal is a mutual insurance company may properly impose. The authority of Wells may be still further restricted by the known fact that he was only a sub-agent, employed to receive applications for insurance and forward them to the company, and to deliver policies issued by the company, and collect premiums thereon. It is not within the apparent scope of the employment of such an agent to make contracts or declarations to bind the company generally; and therefore we think the defendants may show the actual extent and limit of his authority.

In the case of *Harrison* v. *City Insurance Co.* 9 Allen, 231, it was distinctly held that the St. of 1861, *c.* 170, did not affect the power of insurance agents to bind their principals, or change in any respect the rules of the common law upon the subject of agency. The St. of 1864, *c.* 114, affords even less reason for the supposition that it was designed for that purpose. The statute applies only to the persons who assume to act as agents. It

has no reference to or bearing upon the corporations themselves directly. It declares that such persons shall be held to be agents " to all intents and purposes," that is, to all intents and purposes for which the statutes apply to agents of insurance companies But it does not undertake to set forth their powers as agents; nor can it be supposed that it was the intention of the legislature to clothe every person who should solicit insurance in behalf of any foreign insurance company, or transmit the application of any other person for insurance, with the full powers of a general agent of such company. The instructions of the court below assumed a different construction of the statute, which we think was erroneous.

For the several reasons above stated, the verdict must be set aside. *Exceptions sustained.*