THE MILLVILLE MUTUAL MARINE AND FIRE INSURANCE COMPANY, PLAINTIFF IN ERROR, v. ABRAHAM COLLERD, DEFENDANT IN ERROR.

1. Where a policy of insurance is sent to the assured by a messenger, and he refuses to accept it and pay the premium according to its terms and his agreement, but holds it to look into the standing of the company, while it is under advisement, without delivery, acceptance and payment of the premium, the property is at the risk of the assured, and he cannot recover in case of loss by fire.

2. If a tenant who engages to procure insurance of property in the name of his landlord, at his own expense, obtains possession of a policy without right, and passes it to the assured fraudulently, though the owner may have no knowledge of the fraud, he cannot recover for a loss under the policy. The tenant is the agent of the landlord, who is affected by his acts.

3. The company, in such case, is not concluded by the acknowledgment of the receipt of the premium on the face of the policy.

4. It is too late to accept the policy and tender the premium after the property is destroyed, where the policy requires prepayment, and there has been no waiver.

In error to the Hudson Circuit Court.

The defendant (plaintiff in error) is an insurance company of this state, incorporated by act of March 8th, 1859, p. 144.

Section thirteenth of the charter provides, " that especial insurance may be taken without the parties thereto becoming members of the corporation, if desired by the insured." It was therefore not wholly mutual. Section seven enacts, that every person who shall become insured in said company shall, before he receives his or her policy, pay such sum or sums of money as shall be determined upon by the directors." The company has no stock, and its ability to pay losses comes exclusively from the premiums collected.

Abraham Collerd, the plaintiff below, owned the mill and premises described in the policy. R. S. Perrin rented this property of Collerd, and by their agreement, Perrin was to insure the mill, &c., to the amount of $5000, for the benefit of Collerd.

Perrin applied to W. W. Buckley, a local agent of the defendants, residing at Jersey City, November 6th, 1872, to insure the mill and machinery for $5000 for six months. He desired the insurance placed in three companies, and it was agreed, that on the delivery of the policies to Perrin, he should give Buckley his two notes of $140 each, one payable in six weeks, and the other in two months from the date of the policies.

Policies of insurance were made out in accordance with this arrangement in three companies—one in the Millville Company for $2000, one in the North Missouri for $1500, and one in the Lycoming Company for $1500. All were in the name of Collerd, as owner. They were dated November 8th, filled in and executed November 13th, and on that day Buck-

ley sent the three policies, by his office boy, to Perrin, with a letter enclosing two notes drawn for $140 each, as above, requesting him to sign and return them by bearer.

The boy returned with one note for $168, enough to cover the premiums for the two policies in the North Missouri and Lycoming Companies. Perrin kept the Millville policy, and sent a memorandum by the boy to Buckley, *that he would look into the standing of this company, and after he was satisfied about it, send him a settlement.* He said also that he doubted the standing of this company. In half an hour after he received the three policies, he handed them over to Collerd, who knew nothing of the arrangement between Buckley and Perrin. Buckley waited to hear from Perrin.

November 20th, 1872, the mill and premises covered by this policy, burned, and were totally destroyed. About a week after the fire, Perrin took money and a note to pay the premium to Buckley, with either, as he should prefer. Buckley replied that he would have nothing to do with that policy. Collerd also called on Buckley two or three days after the fire, offered to pay the premium on this policy, and Buckley refused to receive payment.

Collerd proceeded to collect the amount of $2000 named in the policy, by action in the Hudson Circuit, and a verdict was rendered in his favor for $2017.95.

Exceptions were taken upon the principal points in the case, and the court ruled in favor of the plaintiff, as was stated, to put the case in the best form for review.

The judgment of the Circuit Court and the bill of exceptions are thus before this court on writ of error.

For the plaintiff in error, *J. H. Nixon* and *L. Abbett.*

For the defendant in error, *Joseph F. Randolph.*

The opinion of the court was delivered by

SCUDDER, J.   Upon these facts, proved at the trial, it was conceded by both parties, and charged by the court that, if

the policy had been made in the name of Perrin, and the loss were payable to him, he could not recover against the company, because there was no legal delivery to him—no acceptance by him, and no payment of the premium, which it was agreed should be paid, or secured to be paid, at the time the policy was delivered.

By the terms of the policy, the premium must be prepaid ; and, by the agreement between Perrin and the company's agent, the policy was not to be delivered and become effectual until the premium was paid. Admitting that Buckley had the power to waive the express condition of the policy requiring the prepayment of the premium, there was no such waiver. It was not asked or conceded. Perrin merely held the policy in his possession until he could examine it ; or, to use his own expression, " look into the standing of the company." He distinctly refused to accept the policy and settle for it, until he was satisfied. This was, in effect, postponing the delivery, the acceptance, and the payment of the premium until a future time, and to this the company, by their agent, Buckley, assented. The condition for prepayment remained, and the company was entitled to notice of acceptance and prepayment of the premium before the contract for insurance was complete. After Perrin had rejected the policy it remained in his hands, not as an executed contract of insurance, but as a proposal to insure which he must accept by payment of the premium, before the company would be bound. His mere silence will not be construed into an acceptance. He must do the act required, to signify his acceptance. He must pay the premium. The contract must be so construed as to preserve mutuality, which is the manifest purpose of this policy and of the acts of the company's agent. It was never intended to be executed on the one side and unexecuted on the other. It was to be complete on both sides at the time of delivery. I know that courts have gone to great lengths in holding the constructive delivery of executed policies of insurance, and have given a liberal construction to policies

and to the authority of agents to waive conditions for the benefit of the assured. It is just, in many cases, that it should be so. But none have gone to the extent of holding insurers under facts like those above stated. It will be sufficient to refer to some of the cases in which these points are discussed, without an extended review. *Myers* v. *Keystone Ins. Co.*, 27 *Penn.* 268 ; *Wood* v. *Poughkeepsie Ins. Co.*, 32 *N. Y.* 619 ; *Sheldon* v. *Atlantic F. and M. Ins. Co.*, 26 *Ib.* 460 ; *Xenos* v. *Wickham*, 2 *L. R. H. L.* 296 ; *Angel Life and Fire Ins. Co.*, § 32, § 39, &c. ; *Bliss L. Ins.*, § 162, &c. ; *Markey* v. *Mutual Benefit Life Ins. Co.*, 103 *Mass.* 78 ; *Hoyt* v. *Mutual Benefit L. Ins. Co.*, 98 *Ib.* 539 ; *Hallock* v. *Insurance Co.*, 2 *Dutcher* 268 ; *Bidwell* v. *St. Louis Fl. Dock Co.*, 40 *Mo.* 42 ; *Bradley* v. *Potomac Fire Ins. Co.*, 32 *Md.* 108.

It is important to determine this part of the case, because if the policy would have been good if Perrin were the assured party, then, *a fortiori*, it would be good to Collerd, the plaintiff, who took the policy without actual notice of the infirmity in the delivery and the non-payment of the premium.

But the policy was not good in Perrin's hands, and we must, therefore, consider the special exception which touches the plaintiff's position in this cause, as a holder of the policy without actual notice.

The defendant excepted to that part of the charge wherein the court say that if the policy were delivered to Collerd before the fire, in pursuance of the arrangement between him and Perrin for insurance, and Collerd did not know, until after the fire, how Perrin held the policy, that the company would be bound.

The position taken by the plaintiff's counsel is a strong one : that the company having executed the policy, which contained an acknowledgment of the receipt of the premium, and placed it in the custody of Perrin, thereby giving him an apparent right to dispose of it, are conclusively bound

when it has been accepted and relied upon in good faith by Collerd, who was the person assured in the policy.

It is answered that the expression in the policy, " that The Millville Mutual Marine and Fire Insurance Company, of Millville, N. J., in consideration of one hundred and twelve dollars, do insure Abraham Collerd against loss or damage by fire to the amount of two thousand dollars," is not, in terms, a receipt for the premium. But it is, in form, an acknowledgment of a consideration for the contract of insurance, and is sufficient to sustain the promise to pay in case of loss.

It is claimed by the plaintiff that this receipt is conclusive upon the authority of *Basch* v. *Humboldt Ins. Co.*, 6 *Vroom* 429. In that case the policy was duly executed and delivered, and the court held that the company was estopped from setting up the non-payment of the premium, *for the purpose of avoiding the instrument.* But here the facts show that the policy was not actually delivered and accepted, and that there was no contract of insurance.

The defendant's insistment that the policy delivered to the plaintiff contained an endorsement, " make your check payable to the order of the company—premium, $112," and that this was notice to the plaintiff that the premium had not been paid, is not tenable. As the premium was to be paid by Perrin, which was known both to Buckley and Collerd, it cannot be said that this endorsement was notice to Collerd that he was expected to pay the premium, nor that it was unpaid. If the policy had been regularly delivered to Perrin, the plaintiff, Collerd, had the right to assume that this condition had been complied with according to the arrangement of the parties.

The question comes, therefore, to this simple proposition : What effect had the position of Perrin, with reference to this policy, upon Collerd, the plaintiff? Is he in any better position for the recovery of his loss under it than Perrin would be, if he were the assured party ?

It is clear that Perrin was not the agent of the company in effecting this insurance, for Article II of the policy says that "it is a part of this contract that any person or persons other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent or agents of the assured named in this policy, and not of this company, under any circumstances whatever, or in any transaction relating to this insurance."

By these express terms of the policy which was held by the plaintiff, he was told that Perrin was his agent, and he assented to it when he took the policy.   But he was also the plaintiff's agent in procuring that insurance to be taken by the company, by his own express engagement for that purpose, for it was a part of their agreement for renting the insured property, that Perrin should procure insurance in Collerd's name.

The general principle of agency is, that notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with, the subject matter of his agency.   All his acts and knowledge in that particular business are obligatory upon the principal. *Story on Agency*, § 140.

An apparent exception is found to this rule in cases where insurance is effected through a broker, who is acting for the assured.   It was held in *Dalzel* v. *Mair*, 1 *Camp.* 532, in an action by the assured against the underwriters for a return of the premium on a policy effected by an insurance broker, that the policy was conclusive evidence of the receipt of the premium by the defendant.   For this there is a reason given : because the receipt in the policy accredits the broker with his principal to that amount, and he shall not afterwards, as between himself and the principal, be allowed to say that the broker never paid him.   There are usually dealings between insurance brokers and underwriters, upon which credits may be based between them, of which the principal can have no knowledge.   The underwriters, by their receipted policy,

enable the broker to obtain a false credit with his principal, and are therefore estopped to deny their receipt. This involves another principle besides the mere question of agency. And the rule applies in cases where there has been an actual delivery and acceptance of the policy.

But in this case the agent, in his own wrong, obtained possession of a policy of insurance, and without any right to it in himself or in his principal, fraudulently passed it over to him as a valid policy, without the knowledge of the insurers. As the agent had no right in the policy, he could transfer none to his principal. His delivery to Collerd was a fraud upon the company, and as between two innocent parties, the principal must be held to have acquired no title to the policy by the wrong of his agent, Perrin. Another ground of exception is, that the judge refused to charge the jury that the tender of the premium made to Buckley after the fire, was not sufficient.

The refusal to charge as requested was erroneous, for, admitting the tender to have been made in proper form, it was too late after the property was destroyed by fire to accept the policy and pay the premium. It was no longer the subject of insurance. Besides, there had been no extension of the time of payment for the policy. It was at the peril of the assured that Perrin held the question of acceptance open for advisement. By the agreement of Perrin and Buckley, the premium was to be paid at the time the policy was delivered and accepted. When the offer to accept was made, the condition had changed—the property was destroyed, and it was too late.

The court submitted to the jury these two facts: *First*— Whether Collerd knew of the arrangement between Buckley and Perrin by which the latter held the policy without delivery and acceptance. And, *second*—Whether there was a tender made of the premium after the fire, as the determining points in the case, and charged upon the law as above stated, for the purpose of having these questions decided upon

the errors assigned. The jury having found these facts in favor of the plaintiff, the questions of law are fully presented, and the judgment for the plaintiff is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY, WALES—11.