## THE HOWLAND ACT CONSTRUED.

Common Pleas Court of Hamilton County.

### JOHN AND MARTHA MCBEE v. THE NATIONAL INSURANCE COMPANY.

Decided, November 29, 1910.

*Fire Insurance—Promise of Solicitor that Provision of Policy Against Other Insurance Shall be Waived—Not Binding on the Company, When—Rules of the Common Law Not Abrogated by the Howland Act—Section 9586.*

1. The Howland act, providing that any person who solicits insurance and procures an application therefor shall be held to be the agent of the company thereafter issuing a policy on such application, anything in the policy to the contrary notwithstanding, was not intended to give to a mere solicitor of insurance all the powers of a general agent, or to change the rules of the common law as to the authority of an agent to bind his principal.

2. Where it does not appear that a solicitor of fire insurance was authorized to waive the provision of the policy against other insurance, or that the agents who wrote the policy consented to such a waiver or had knowledge that other insurance had been placed on the same property, a petition for a reformation of the policy so as to provide for such waiver will be denied.

*Joseph T. Harrison,* for plaintiffs.
*Black & Black,* contra.

SWING, J.

This is an action to have a fire insurance policy upon a dwelling-house reformed so as to express what is alleged to have been the agreement of the parties.

John and Martha McBee, husband and wife, owners of a house and lot, obtained a fire insurance policy of defendant company, and very shortly afterward the house was destroyed by fire. At the time of the application for and issuing of the policy of defendant company there was other insurance in other companies upon the building insured, in large amounts, more than the whole value of the building as shown by the evidence. The

policy of defendant company contains the following provision, to-wit:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The policy also contains the following provisions, to-wit:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

No consent to other insurance and no waiver of the provision of the policy above quoted as to other insurance was written upon or attached to the policy.

The petition alleges that the policy was solicited by Albert Humphreys for the defendant, which executed the same on December 1, 1906, through its agents, John A. Pentland & Company, of Cincinnati, for whom said Humphreys was a solicitor; that Humphreys was informed of the other insurance, and "understood from plaintiffs that the policy to be taken should have the fact as to such other insurance indorsed upon or added to it," and that "such fact was communciated by Humphreys to Pentland & Company with a like request" before the execution of the policy, but the policy was issued and received by plaintiffs without any such indorsement upon it, and the premium was paid to Humphreys, and plaintiffs did not discover the omission until after the fire, which occurred the next day. Plaintiffs say the omission was by mutual mistake of the parties, and ask to

have the policy reformed to conform to the said agreement. Humphreys was a solicitor of insurance, not in the employ of defendant, but occasionally taking applications to Pentland & Company, defendant's general agents. It is claimed by plaintiffs that Humphreys was the agent of the defendant by the terms of Section 3644, Revised Statutes of Ohio, "the Howland act." The terms of that section are quite broad and general, but I think it should be construed in the light of the preceding section and the real end and purpose of the act. The question as to the value of the property insured is one thing. That as to other insurance is another and different. An insurer is by the Howland act made liable for the whole amount of the insurance, regardless of the value of the building. But the provision as to other insurance, unless waived, will render the policy void, however small the amount of the other insurance may be, if there is any other insurance. I can hardly conclude that that section gives "a mere solicitor" all the powers of a general agent, as for instance the power to agree and bind the company to waive the provisions in the policy as to other insurance; as for example, these provisions:

"Nor shall any privilege or permission affecting the insurance under the policy exist or be claimed by the insured unless so written or attached."

In Massachusetts there was a statute (Statutes of 1861, Chapter 170), as follows:

"Any person who solicits insurance on behalf of any fire or life company, whether chartered in this commonwealth or elsewhere, or who transmits for any person other than himself an application for insurance or a policy of insurance to or from said company, or advertises that he will receive or transmit the same, shall be held to be an agent of that company to all intents and purposes and within the meaning of section seventy-seven of chapter fifty-eight of the general statutes, unless it can be shown that he receives no commission or other compensation or consideration for such service from the company."

In the present case Humphreys received a commission from the company, a share of the premium. This section is substantially and almost literally like Section 3644, Revised Statutes of

Ohio, which also makes the solicitor the agent of the company.

In the case of *Harrison* v. *City Fire Insurance Company*, 9 Allen (Mass.), page 231, referring to said act, the court said:

"That enactment was not designed to change in any way the rules of the common law regulating the power of agents or their authority to bind their principals."

It also said of the solicitor:

"He was a special agent only, with strictly limited powers. He could not issue a valid policy or enter into contracts generally in behalf of defendants. He was authorized only to receive and forward applications, etc., to collect premiums, etc. Beyond this his authority as agent did not extend."

It is also said:

"It is no answer to say that he (plaintiff) had no knowledge of the limited extent of the agent's authority. This he was bound to ascertain," etc. And,

"No rule of law is better settled than that which requires a person who transacts business with a special agent to take notice of the nature and scope of the agent's powers." And, "If it were not so there would be no distinction between a special and a general agent. A principal would in all cases, be at the mercy of his agent, however carefully and strictly he might have restricted his powers."

In *Markey* v. *Mutual Benefit Insurance Company*, 103 Mass., 78, the same thing is held. It is said, pages 78 and 79, after citing 9th Allen, 231:

"The statute applies only to persons who assume to act as agents. It has no reference to or bearing upon the corporations themselves. It declares that such persons shall be held to be agents, 'to all intents and purposes to which the statutes apply to agents of insurance companies.' But it does not undertake to set forth their powers as agents; nor can it be supposed that it was the intention to clothe every person who should solicit insurance * * * with the full powers of a general agent of the company."

I have set forth the Massachussetts statute and decisions thus fully because they seem to me conclusive of the true construction to be given to Section 3644 of our Revised Statutes, and as to,

the claim that knowledge of a mere soliciting agent of other insurance, or an understanding with him will bind the company to waive the provisions of the policy as to other insurance.

But Humphreys testified that he informed Pentland & Company, the general agents of the company who issued the policy, of the other insurance and understood that they were satisfied with it, though they omitted to indorse the consent on the policy. They gave it to him without the endorsement, and he so delivered it to plaintiffs, who were his neighbors. Pentland & Company, John A. Pentland and another deny Humphrey's statement, and give their version of their conversation with him.

The law as to the proof required is stated in *May on Insurance,* Volume 2, Section 566, as follows:

"The evidence, however, in such case must be clear. If there be a substantial doubt as to what was the statement of the applicant, or as to the fairness of his claim to be mistaken, or the agreement of the parties, or a material conflict of testimony, the court will not aid the plaintiff."

There is in this case direct "conflict of testimony" on the essential matter, and I saw nothing in the testimony of Pentland and others on the stand to discredit them. Furthermore, considering the probabilities, it would be suprising if they had agreed to such a waiver as is claimed, knowing that the buildings were already insured for so much, far beyond their value. Besides, they being insurance men of experience and ability, would in all probability have endorsed the waiver on the policy if they had agreed to it, unless they wished to defraud the insured for their share of the small commission, which I could not assume. Furthermore, Humphreys himself was an insurance man of experience and must have known of the necessity of the endorsement of the waiver upon the policy, and being a neighbor of plaintiffs, would likely have seen to it that the endorsement was made as, he says, he had agreed to do, and informed Pentland & Company about it. But he took the policy and delivered it to plaintiffs without any endorsement upon it. Under the circumstances it can not be said that it is clearly proved that the fact of the other insurance was made known to Pentland & Company.

I ought to say that the undisputed facts in the case are not calculated to cause one to look with favor upon the petition to reform the contract, unless the right to it should be clear.

The plaintiffs purchased the property, about two acres, November 1st, 1906, agreeing to pay for it $4,000. They paid $300 cash and gave a mortgage for the balance, $3,700. The ground, about two acres, was valuable. The buildings were old and of comparatively little value. December 1st, 1906, they obtained insurance on the dwelling and some other out-houses, in two companies, amounting to $3,080. December 3d, 1906, they obtained the insurance with defendant company, making the total insurance $4,230, or $230 more than the purchase price of the whole property. December 4th, 1906, the buildings burned. The testimony goes to show that the buildings were not worth more than from $1,000 to $1,500. Plaintiffs and Humphreys say (the latter now dead, but having given his deposition) that Humphreys solicited plaintiffs to permit him to get the insurance for them; that plaintiffs did not solicit Humphreys. This is not controverted in the evidence and I do not question it.

But I find, first that Humphreys was not authorized to waive the provision of the policy as to other insurance; second, that it is not clearly proved that Pentland & Company agreed to waive the provision or that they knew of the other insurance when they issued the policy. The prayer for a reformation of the policy will therefore be denied.