ELIZA J. HOYT *vs.* MUTUAL BENEFIT LIFE INSURANCE COMPANY.

At an interview with an applicant for life insurance the agent of the insurance company offered the policy to him and asked him to pay the premium, but was referred by him to a third person who had previously arranged with the applicant to pay it. The agent agreed to call on this person for it; but never did so, and retained the policy in his own possession. *Held*, that instructions were erroneous which permitted a jury to find that these facts were equivalent to actual delivery of the policy and payment of the premium.

CONTRACT on the defendants' policy of insurance on the life of the plaintiff's husband, James W. Hoyt, for three thousand dollars, payable on his death to the plaintiff. The answer denied the completion of any contract of insurance.

At the trial in the superior court, before *Lord*, J., these facts appeared: William H. S. Jordan was in 1865 the general agent in Massachusetts of the defendants, a mutual life insurance company established under the laws of New Jersey, whose directors had made certain "instructions and rules," subject to which Jordan accepted his agency, with power to appoint sub-agents, among which "instructions and rules" were the following: "The agent is not authorized to deliver a policy unless he is satisfied that the applicant is in good health, except in cases when the premium was paid to him at the time of making the application; in which latter case, and the risk being approved of at the home office, the company will be liable from the date of the application. If the application is not accepted, the premium will be returned. The agent is prohibited, in all cases, except when the premium has been paid in advance, from delivering a policy after thirty days from the date thereof, but will return the same to this office. After the expiration of said thirty days, a medical examination being had at the expense of the applicant, and found satisfactory, a new policy will be issued." "No risks are binding until assumed by the home office." "Agents are not authorized in any case to make, alter or discharge contracts, or consent to assignments."

By the solicitation of Charles F. Wells, a sub-agent of Jordan, on September 21, 1865, at Ballardvale, James W. Hoyt made an application to the defendants for such a policy as was described in the declaration, which application was forwarded on that day to the defendants' home-office at Newark, New Jersey, Wells agreeing that "if, when the policy came on, he did not choose to take it, he need not do so." In response to this application a policy was made out at the home-office and sent to Boston to Jordan, who received it before the end of September, but did not deliver it to Wells until some time between November 1 and November 4. Wells, on the day he received it went to Ballardvale, where he found Hoyt ill with typhoid fever (with which he had been attacked the week previous,) but supposed to be convalescing. What appeared at the trial concerning this interview was stated in the bill of exceptions as follows

" Wells testified that he offered the policy to Hoyt; that Hoyt was discouraged, and said he could not pay for the policy, and refused to take it Mrs. Hoyt, the plaintiff, the only other person present, testified that Wells said that he had brought his policy; and Hoyt said if he would go to Mr. Banks that he would pay him, and that he had made arrangements with him to do so; and that Wells agreed to do so. There was other evidence on both sides bearing upon what took place at that interview, and the evidence here stated is not either all the evidence, or admitted to be the substance of all the evidence, but all the evidence was of the same general nature."

Wells did not ask Mr. Banks to pay Hoyt's premium, but returned the policy to Jordan at Boston, and was then first informed of the existence of the rule of the company, above quoted, prohibiting agents from delivering policies to applicants not in good health, except in cases where payment of the premium had accompanied the application.

A few days after this, Hoyt, ascertaining that Wells had not called upon Banks for the premium, sent the amount of it to Boston to Jordan, who refused to receive it and deliver the policy, on the ground of Hoyt's illness. Hoyt was in fact much more ill at this time than when Wells called on him with the policy; but it did not appear that the increase of his illness was known to the defendants or their agents. He died of the fever on November 23.

There was testimony of Banks tending to show " that Hoyt had arranged with him for the payment of the premium ; and that, if he had been asked for it, he should have arranged it."

There was no evidence that Hoyt had any knowledge of the by-laws of the company; and the plaintiff " objected to the competency of the private rules, regulations and instructions of the defendants to their agents, which were not referred to in any way in the application and policy, were no part of the contract, were not communicated to Hoyt, and which even the agent Wells was ignorant of."

But the judge said that he would receive them in evidence " and give such direction to the case and to the jury as the whole

case demanded;" and, refusing a prayer of the defendants for an instruction that there was no evidence sufficient to warrant a verdict for the plaintiff, he instructed the jury " that, inasmuch as the by-laws or regulations of the defendants in relation to the delivery of the policy after thirty days from its date, or when the insured was sick, were not referred to within the application or policy, and no knowledge was had of them before delivery of the policy, if it ever was delivered, (of which the jury could judge upon instructions to be given,) in the usual mode by the proper officer, such by-laws or regulations after such delivery could not be set up in defence of the policy; that it would be a fraud thus to set up secret instruction to an agent; that the real question for the jury was, whether there had been a delivery of the policy; that delivery of the policy was necessary to the completion of the contract; and that to constitute a delivery it was not necessary that the policy should be passed from the actual manual custody of any party to the actual manual custody of the other, but something must take place which the parties themselves understood to be equivalent to actual manual transfer." And then he instructed them further as follows : " In the sale of personal property for some purposes a delivery is necessary, but there are chattels from their nature incapable of being transferred from the hand of one person to that of another, and in such a case a manual transfer is not necessary, but when the parties understand that all has been done that is to be done between the parties, and that thenceforth the article is to be under the control of the vendee, with no further act to be done by the vendor, the delivery is complete. This is not the case with regard to a policy of insurance. That is capable of a manual transfer from one to the other; but the same principle governs If both parties understand that all has been done that is to be done by the insured in order to have the full benefit, control and management of the policy, and no other act remains for him to do, this is sufficient to warrant the jury in finding a delivery of the policy. To apply this principle to the present case, if the jury are satisfied that Hoyt had made an arrangement with Banks to pay the premium upon this policy, and Banks was

prepared to pay it upon call and would have paid it upon call, and it was agreed between Hoyt and Wells that Wells would call upon Banks for it, and both parties understood that nothing more was to be done by Hoyt, and nothing remained except for Wells to call for the premium from Banks, and Wells neglected thus to call for the premium, these facts would be sufficient to warrant the jury in finding such a delivery of the policy as would evidence a valid and complete contract of insurance between the parties; but nothing short of this would be sufficient; that if, as claimed by the defendants, Hoyt declined to take the policy, of course there was no contract, and the plaintiff could not recover; if the arrangement in relation to Banks was a new arrangement between Hoyt and Wells to procure the assistance of Banks in paying the premium, or if in any respect it fell short of what has been previously stated as necessary, it was insufficient, the contract was incomplete, and the plaintiff could not recover upon it."

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*C. W. Loring*, (*W. C. Endicott* with him,) for the defendants.

*D. Saunders, Jr., &. J. W. Perry*, for the plaintiff, to the point of the delivery of the policy, cited, among other cases, the following: *McCulloch* v. *Eagle Insurance Co.* 1 Pick. 278: *Thayer* v. *Middlesex Insurance Co.* 10 Pick. 332; *Loring* v. *Proctor*, 26 Maine, 18; *Mactier* v. *Firth*, 6 Wend. 104; *Kohne* v. *Insurance Company of North America*, 1 Wash. C. C. 93; *Tayloe* v. *Merchants' Insurance Co.* 9 How. 390; *Union Insurance Co.* v. *Commercial Insurance Co.* 2 Curtis, 524; *S. C.* 19 How. 318; *Adams* v. *Lindsell*, 1 B. & Ald. 681; *Xenos* v. *Wickham*, Law Rep. 2 H. L. 296.

WELLS, J. It does not appear to have been understood or intended by the parties, that a contract of insurance should be effected otherwise than by receipt of the premium and delivery of the policy. The judge at the trial held " that delivery of the policy was necessary to the completion of the contract;" and the instructions were given upon that assumption. The principal question is, whether the instructions, upon which the jury

have found such a delivery, were correct in law. The court are all of opinion that they were not correct. The premium was not paid; the policy was not delivered. Taking the facts most strongly in favor of the plaintiff, they show merely that Hoyt, whose life was the subject of the proposed insurance, had made an arrangement with Banks on the one hand, and with Wells, a sub-agent of the defendants, on the other, that the money should be paid by, and the policy delivered to, Banks, instead of himself; and that Wells, having agreed to call on Banks for this purpose, failed to do so. The instructions allowed the jury to find that this arrangement, and the neglect of Wells to call upon Banks to receive the premium and deliver the policy, were equivalent to an actual payment and delivery. But the undertaking of Wells was a mere personal one, for the performance of which the insurance company was not responsible. And besides, even if Wells had authority to bind the company by giving credit for the premium, no such credit was in fact given. Wells had no promise from Banks upon which to give credit; and the whole arrangement excludes the idea of any credit. The policy was to be delivered only upon payment. It was not an arrangement by which Wells accepted something else as an equivalent for the premium, and consented to hold the policy thereafter as Hoyt's, solely for his benefit or convenience. In this respect the case differs essentially from those cited by the plaintiff to show that an instrument may take effect as a contract, although retained in the manual possession of the party executing it. The policy here was retained for payment of the premium, and not held as a simple deposit.

In the opinion of the court the facts do not warrant the instructions that were given to the jury upon the question of delivery *Exceptions sustained.*