## GEORGE E. CARLETON

### *vs.*

## PATRONS' ANDROSCOGGIN MUTUAL FIRE INSURANCE COMPANY.

## Oxford. Opinion March 25, 1912.

*Insurance. False Representations. Misrepresentations. Waiver. Estoppel.*
*Stipulations.*

A policy of insurance is a contract founded on a proposal on one side and an acceptance on the other; and it does not become operative as a contract until the application is accepted.

Where the insured in a fire policy sued on the policy for a loss occurring after its issuance, he could not rely on the personal assurance of an officer of the insurer to protect him until a decision on the application.

A representation in an application for a fire policy that the statements therein are true must be true at the time the application is accepted and the contract of insurance completed by the issuance of a policy, so that where the applicant represented that other insurance would expire on a designated date, which was before the acceptance of the application, and thereafter and before the acceptance of the application he procured other insurance without knowledge of insurer, the representation was not true at the time of the acceptance of the application, and the policy was invalid.

Where a fire policy, stipulating that it should be void if the insured had other insurance, was issued on an application specifying when other insurance would expire, which was prior to the date of the policy, and no officer or agent of the insurer had any knowledge of additional insurance procured by the insured subsequent to the application and before the issuance of the policy until after a fire, the mere fact that the insured expressed to the soliciting agent at the time of the application an intention to obtain other insurance, and that the agent said that if the insured was not satisfied with the size of the policy he could get other insurance, was not a waiver by the insurer of the stipulation against other insurance.

The insurer was not estopped thereby from relying on the invalidity of the policy because of the other insurance.

Where a mutual fire policy, stipulating that it should be void if the insured had other insurance, was invalidated by the insured procuring additional

insurance subsequent to his application, which recited the date of the expiration of other existing insurance, and before the acceptance of the application, the insurer, having no knowledge of the additional insurance until after a loss, did not by inadvertently levying an assessment on insured's premium note waive its defense or a ratification of the act of the insured in procuring the additional insurance.

A fire policy stipulating that it shall be void if the insured "now has or shall hereafter make any other insurance * * * without the assent * * * of the company" is invalidated by the act of the insured in procuring, after the date of his application, other insurance without the knowledge of the insurer or any of its officers or agents.

A fire policy on a building and furniture therein is void in its entirety if void on account of prior insurance on the building.

On report. Judgment for defendant.

Assumpsit on a policy of fire insurance. Plea, the general issue with brief statement alleging in substance that the policy was rendered void because of misstatement of material facts in the written application for the policy and also because of a prior valid insurance on the property when the policy in suit was issued, etc. At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Arteas E. Stearns,* for plaintiff.

*John A. Morrill,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

WHITEHOUSE, C. J.    This is an action upon a policy of fire insurance bearing date July 1st, 1910, but actually issued by the defendant to the plaintiff July 25, 1910, in the form prescribed by law for the Maine standard policy, with a rider attached thereto. It contains the following stipulation: "This policy shall be void if any material fact or circumstance stated in writing has not been fairly represented by the insured; or if the insured now has or shall hereafter make any other insurance on the said property, without the assent in writing or in print of the Company."

Two defenses to this action are interposed by the defendant, first, that the policy was rendered void by misstatement of material

facts contained in the written application signed by the plaintiff, and second, that by a stipulation in the policy itself it was rendered void by a prior valid insurance policy in the Connecticut Fire Insurance Company existing when the application for the policy in suit was accepted. The case comes to the Law Court on report.

The following facts are either established by agreement of the parties or by satisfactory evidence in the case. July 1, 1910, the plaintiff made a written application to the directors of the defendant company through W. M. White, its licensed agent, for an insurance of $1550 upon the property described in the policy and at the same time executed a premium note to the Company for the sum of $77.50, but the application was returned by the secretary for the reason that in his opinion the amount of insurance named was excessive.

July 6, 1910, the plaintiff made an amended application to the directors of the Company for an insurance of $1050 upon the same property and at the same time reduced the amount of the premium note to $52.50, both application and premium note being redated July 6, 1910, and the receipt of this revised application and premium note was duly acknowledged by the secretary of the Company in a letter to the agent White, dated July 9, 1910, in which he said, "I will refer George E. Carleton's application to the directors on the 25th and I think it will be accepted in its present form but am not sure. We will protect until they decide and I notify him."

At the next regular meeting of the board of directors held July 25, 1910, the plaintiff's application with others was accepted and soon after the policy of insurance in suit was issued and forwarded to the plaintiff by mail.

In the application of July 6, were the following question and answer, namely:

Q. Is there any other insurance on this property, if so, give name of company and amount.

A. $1000, expires next Friday, Connecticut Fire Insurance Company.

Thereupon the following covenant is appended to the application. "I hereby covenant and agree to and with the said Company that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and

risk of the property to be insured so far as the same are known to the applicant and are material to the risk."

July 15, 1910, the plaintiff obtained a policy of insurance through the local agent at Rumford Falls, of the Connecticut Fire Insurance Company for $1250 upon the same buildings described in the policy in suit without disclosing to that agent the pendency of his application to the defendant company, and this policy was held by the plaintiff August 8, 1910, when the plaintiff's buildings were destroyed by fire. The Connecticut Company at first denied their liability on the plaintiff's policy claiming that the other insurance had been obtained by the plaintiff without the knowledge or consent of that Company or its agent, but later without admitting their liability, the Company paid to the plaintiff the sum of $700 as a compromise. It satisfactorily appears from the testimony that no officer or agent of the defendant company had knowledge of the Connecticut policy until after the fire. It also appears from the plaintiff's own testimony that the secretary's letter to Mr. White of July 9, in which he stated that the plaintiff's application would be referred to the directors on the 25th, was read to the plaintiff July 14, 1910. At their next regular meeting August 29, 1910, the directors of the defendant company discussed the plaintiff's loss, and the next day the secretary notified him that the Company denied its liability for the loss of his buildings.

It appears that in making an assessment of 5% on premium notes, the plaintiff's note was included and that he was notified that an assessment of $1.67 had been made on his note. This assessment the plaintiff paid on the 5th of the following October, but it was claimed on the part of the defendant that the plaintiff's premium note was erroneously included in the assessment through inadvertence and on November 2, 1910, the cash premium, premium note and assessment were returned to the plaintiff by the defendant company.

It is not in controversy that in an interview with the agent White before the policy in suit was actually issued July 25, the plaintiff stated to the agent that he did not think $1050 was enough and that he was going to Rumford and get some insurance up there and that the agent told him if he was not satisfied with that amount he could get more insurance in some other company the same as he himself had done. But the plaintiff admits that at the

time of the application for the policy in suit was filled out, the agent suggested to him that he should state when his former Connecticut policy expired, and told him that the Company would want to know about that other insurance and when it expired.

It has been seen that the question of the acceptance of the plaintiff's revised application of July 6, for the policy in suit, was referred to the decision of the directors of the defendant company at their meeting of July 25, and that the plaintiff was duly informed on July 14, that it would not be accepted until the 25th if at all; and it is not in controversy that the application was not accepted until July 25, and that the policy was not in fact made out and delivered to the plaintiff until a short time thereafter.

It is obviously unnecessary to cite authorities in support of the proposition that upon the facts above stated there could be no perfected contract of insurance between these parties until the plaintiff's application was accepted by the directors of the defendant company, although the policy, which was actually made after July 25, bears date July 1. A policy of insurance is a contract between the parties, and like all other contracts founded upon a proposal on one side and acceptance on the other, it does not become operative as a complete and valid contract until the application for it is accepted. Wood on Fire Insurance, section 6 et seq. May on Insurance, sec. 49, et seq; *Wainer* v. *Milford Fire Ins. Co.,* 153 Mass., 339; *Allen* v. *M. M. Acc. Assm.,* 167 Mass., 18; *Hoyt* v. *M. B. Ins. Co.,* 98 Mass., 539; *Markey* v. *M. B. Ins. Co.,* 103 Mass., 78.

But it appears that in his letter of July 9th, respecting the probable action of the directors upon the application of the plaintiff, the secretary of the Company wrote "We will protect until they decide and I notify him;" and it is contended by counsel that "the plaintiff had a right to rely upon this representation that from that time he was insured as fully as if he had the written policy in his possession." But it is important to remember that the plaintiff's loss did not occur between the date of the application and the time of its acceptance, but after its approval by the directors on July 25, and after the delivery of the policy to the plaintiff. Whether the secretary's assurance of protection in the meantime, would have created any liability on the part of the Company for a loss which occurred before the Company's acceptance of the application and

delivery of the policy, is a question not now before the court. The plaintiff has declared upon a policy of insurance which could not take effect as a completed contract until July 25, and he must recover if at all upon that contract and not upon the personal assurances of the secretary prior to that time, with reference to the possible contingency of a loss occurring before the acceptance of the application and issuance of the policy.

The covenants and representations contained in the application of July 6, have already been recited in the statement of facts, and it has been seen that when the application was made the agent called the plaintiff's attention to the question and answer in regard to other insurance and stated to him that the directors would wish to know about other insurance. It was necessary that such representation in the application should be true at the time when the application was accepted and the contract completed.

In May on Insurance, section 190, page 385, 4th ed., it is said: "A representation is a continuous statement from the time it is made during the progress of the negotiations, and down to the time of the completion of the contract; so that though in point of fact the representation be true when actually made, yet if by some change intervening between that time and the time of completion of the contract it then becomes untrue, it will avoid the contract, if the change be material and to the prejudice of the insurers, or be such as might probably influence their opinion as to the advisability of accepting the risk. The law regards it as made at the time the contract is entered into. And the same rule applies in case of concealment." See also *Piedmont & Arlington Ins. Co.* v. *Ewing, P. & A. Ins. Co.*, 92 U. S., 377; *Blumer* v. *Phoenix Ins. Co.*, 45 Wis., 622.

In the case at bar the plaintiff's representation in regard to other insurance in his application of July 6, which he covenanted to be a full and true exposition of all the facts, etc., was not a full statement in regard to other insurance on July 25 when his application was accepted and the contract made, for the reason above stated, that in the meantime, namely, July 15, the plaintiff had procured other insurance on the same buildings for $1250 in the Connecticut Fire Ins. Co. without the knowledge of the defendant company, and was still the holder of that policy at the time of the fire on August 8. The contract made with the defendant company applied

to a risk materially different from that described in the plaintiff's application. The minds of the parties did not meet in mutual understanding of the situation existing at the time the application was accepted and the policy never became a valid contract between the parties. The fact that the feasibility of procuring further insurance was mentioned between the plaintiff and the agent, and that the plaintiff expressed an intention to obtain other insurance, will not constitute a waiver or estoppel on the defendant, it being admitted that no officer or agent of the company had any knowledge until after the fire that the plaintiff had in fact obtained other insurance. *Schenck* v. *Ins. Co.,* 24 N. J. L., 447; *Gray* v. *Germania Fire Ins. Co.,* 155 N. Y., 180; *Stone* v. *Howard,* 153 Mass., 475; *Parker* v. *Rochester Ger. Ins. Co.,* 162 Mass., 479; 2 May on Ins. page 1183, Note a.

Nor did the assessment by the directors of 5% on the plaintiff's premium note constitute sufficient evidence of either a waiver or ratification on the part of the Company. The defendant's claim that the plaintiff's note was inadvertently included in the assessment, is rendered probable by the fact that the plaintiff's claim for insurance was rejected at the same meeting and that his assessment of $1.67, the cash premium and premium note were subsequently returned to the plaintiff. But in any event, it has been frequently held that a premium note given on a policy which does not become operative, cannot be enforced and it is not even necessary for the Company to make a formal declaration that the note is void. 2 May on Insurance, sec. 345, page 750; *Betcher* v. *Capital Fire Ins. Co.,* 78 Minn., 240. And in this State it has been frequently held that when the note was originally valid and the policy was rendered void by a subsequent breach, a subsequent assessment is no waiver of the breach. *Knowlton* v. *Insurance Co.,* 100 Maine, 481, and cases cited. *Towle* v. *Insurance Co.,* 107 Maine, 317.

But the stipulation in the policy itself that it shall be void "if the insured now has or shall hereafter make, any other insurance on the said property without the assent in writing or in print of the Company" constitutes another insuperable objection to the maintenance of this action. At the time the plaintiff's application of July 6, was accepted by the defendant company, it has been seen that the plaintiff in fact had other valid insurance to the amount

of $1250 in the Connecticut Fire Insurance Company, which he had procured on July 15, and that no officer or agent of the defendant company had any knowledge of such prior insurance until after the fire.

Upon this state of facts under such a stipulation, the plaintiff's policy in the defendant company if otherwise operative, was rendered void by the existence of a prior valid insurance. *Lindley* v. *Union Ins. Co.*, 65 Maine, 368; *Bigelow* v. *Ins. Co.*, 94 Maine, 39. The last named case is cited by counsel as authority for the plaintiff; but it distinctly appears that the agent of the Imperial Insurance Company, one of the companies involved in that case, had knowledge of the fact of the prior insurance there in question, admitted its liability and paid its proportion of the loss, and it was properly held upon these facts that that Company had waived the stipulation in this policy in regard to the assent in writing. On the other hand, it appears that the defendant company in that case had no knowledge of a prior insurance in the Imperial Company and there being no stipulation in the policy permitting other insurance, judgment was rendered for the defendant.

It is also familiar law that such a contract of insurance is entire, and if void on account of prior insurance on the buildings, an insurance on the furniture cannot be recovered. *Day* v. *Charter Oak Ins. Co.*, 51 Maine, 91; *Dolloff* v. *Ins. Co.*, 82 Maine, 266.

The certificate must accordingly be,

*Judgment for the defendant.*