PATRONS MUTUAL INSURANCE
COMPANY

v.

Raymond M. RIDEOUT, Jr. et al.

Supreme Judicial Court of Maine.

Feb. 25, 1980.

Clyde L. Wheeler, Vernon I. Arey (orally), Waterville, for plaintiff.

Lipman, Parks, Livingston, Lipman & Katz, P.A. John M. Parks (orally), David M. Lipman, Augusta, for LaChance.

Bernstein, Shur, Sawyer & Nelson William W. Willard (orally), Portland, for U. S. F. & G.

Maurice E. Hebert, Augusta, for Rideout.

Before McKUSICK, C. J., WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ., and DUFRESNE, A. R. J.

WERNICK, Justice.

Plaintiff Patrons Mutual Insurance Company brought a civil action in the Superior Court (Kennebec County) seeking a declaratory judgment that by virtue of an automobile liability insurance policy it issued to

Marguerite Rideout, as the insured named in the declarations of the policy, plaintiff had no obligation to defend against suits, and was free of legal liability for claims, arising out of a collision which occurred on November 20, 1976 and involved an automobile operated by Marguerite Rideout's daughter, Ann Rideout. The automobile was owned by a friend of Ann. The complaint named as defendants: Raymond M. Rideout, Jr., Administrator of the estate of Ann Rideout (who was killed in the collision); Janice Gary and Elayne Weston, the operators of other automobiles involved in the collision; United States Fidelity & Guaranty Company, liability insurer of defendants Gary and Weston; and Louise LaChance and Melissa Knox, passengers in the Gary automobile who were injured in the collision.

After a hearing, the Superior Court decided that the policy issued to Marguerite Rideout imposed on plaintiff insurance company no legal obligation to defend against suits, and subjected it to no legal liability for claims, arising from the collision involving Ann Rideout. The Court reached this conclusion by applying 24–A M.R.S.A. § 2411,[1] the Court having determined that there were "omissions" of factual information in the application for the insurance which were "[m]aterial . . . to the acceptance of the risk . . . by the insurer", or were such that the "insurer in good faith would . . . not have issued the insurance . . . at the same premium rate."

All the defendants, except the administrator of the estate of Ann Rideout, have appealed to this Court from the judgment in favor of plaintiff entered in the Superior Court.

We decide that the Superior Court committed error of law in finding that there were "omissions" at all in the application for insurance, let alone such "omissions" as Section 2411 requires to prevent a recovery against plaintiff under the insurance policy issued to Marguerite Rideout. We therefore sustain the appeal and remand the case to the Superior Court with directions that it enter judgment, in favor of defendants, adjudicating that by virtue of the policy in question plaintiff insurance company is under obligation to defend suits, and is subject to liability for claims, arising from Ann Rideout's involvement in the automobile collision under consideration.

In November 1975, Raymond M. Rideout, Jr., and Marguerite Rideout, husband and wife, commenced dealing with an insurance agency for the purpose of arranging liability insurance on a second "family" automobile they had acquired for primary use by Mrs. Rideout.[2] At a meeting between an insurance agent and Mr. Rideout during which the agent asked Mr. Rideout various questions, the agent filled out a Patrons Mutual Insurance Company form application for insurance. Mr. Rideout brought this completed form home to be signed by Mrs. Rideout, and after she had signed it, the application was returned to the agent to be submitted to the insurance company.

Two parts of the form application have critical bearing in this case: (1) a space under the heading "Operators of the Auto-

---

1.  24–A M.R.S.A. § 2411 provides:

    "All statements and descriptions in any application for insurance or for an annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

    "*1.* Fraudulent; or

    "*2.* Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

    "*3.* The insurer in good faith would either not have issued the insurance or contract, or would not have issued it at the same premium rate, or would not have issued insurance in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

2.  The declarations in the policy identify Marguerite Rideout as "Named insured." However, under the definition of "named insured" in the policy Mr. Rideout, as Marguerite's spouse living with her in the same household, would also be a "named insured."

mobile(s)", which was at the top of the second page of the form, and (2) a space under the heading, "List Below All Accidents That Any Person, To Be Insured By This Application, Has Had", which appeared at approximately the middle of the second page. In the former space, regarding "operators", additional printed matter appeared indicating that further information was sought, as follows: Years license held; date of birth; designations of the "operators" as "principal" or "other"; and the marital status, sex and occupation of "operators." As to the latter space relating to the prior "accidents" of "Any Person, To Be Insured By This Application", additional printed matter appeared on the form indicating that information was sought regarding the date and location of each accident, the extent of personal property damage, and the fault and convictions involved.

In the space bearing the "operators" heading the Rideouts filled in Mrs. Rideout (indicated to be the applicant) as "principal", and her husband as "other", "operator." In the second space under the heading "Accidents" etc. the Rideouts filled in the word "None", thereby indicating that neither Mr. nor Mrs. Rideout, listed as "operators", had been involved in a prior automobile accident. On the basis of the application form as thus completed, plaintiff insurance company issued the automobile liability insurance in question.

As pertinent to the collision at issue in which Ann Rideout was operating an automobile owned by one of her friends, the policy contained the following provisions: (1) with respect to the operation of an *owned* automobile (defined as "a private passenger . . . automobile . . . described in this policy for which a specific premium charge indicates that coverage is afforded" or one that "replaces" it, or "a *temporary substitute automobile*"), the policy afforded liability insurance coverage to a "named insured" as well as to anyone operating with the "permission" of a "named insured"; (2) with respect to operation of a *non-owned* automobile, the policy extended liability insurance coverage not only to a "named insured" but also to "relatives",

defined as any person "related to the named insured by blood, . . . who is a resident of the same household, provided neither such relative nor his spouse owns a private passenger automobile."

The policy was initially issued effective November 7, 1975 for a period of six months. It was thereafter renewed, without resort to any supplemental application, for respective six month periods, the last such renewal covering the period November 7, 1976 to May 7, 1977.

When the application for insurance was submitted and the insurance policy was initially issued, Ann Rideout was *not* a "resident" of her parents' household; she was then married and living with her husband in New Hampshire. By July of 1976, however, Ann, having been divorced, became a "resident" of her parents' household (and, it would appear, she did not herself own a private passenger vehicle). Thus, under the terms of the policy at issue Ann became covered, as a "relative", should she operate a "non-owned" automobile (with the permission of the owner of such automobile). Accordingly, the policy in question provided insurance coverage to Ann for liability she incurred when, in operating (with permission) her friend's automobile, a *non-owned* automobile under the policy, she became involved in the collision of November 20, 1976.

Acknowledging that its policy in terms covered Ann, plaintiff insurance company contends that its obligations under the policy are nevertheless avoided pursuant to 24–A M.R.S.A. § 2411 because of the claimed "omissions" by the Rideouts in the application for issuance of the policy.

The Superior Court agreed with plaintiff's position, deciding that the failure of the Rideouts to provide Ann's name in the application space under the heading "Operators of the Automobile(s)", and the information as to her prior accidents in the space under the heading "All Accidents That Any Person, To Be Insured By This Application, Has Had", constituted, within the contemplation of 24–A M.R.S.A. § 2411,

"omissions . . . [m]aterial . . . to the acceptance of the risk . . . or [such that] [t]he insurer in good faith would . . . not have issued the insurance . . . at the same premium rate, . . . if the true facts had been made known to the insurer as required . . . by the application for the policy . . . ."

In so deciding, the Superior Court Justice erroneously assessed the meaning of the language used by plaintiff insurance company on its application form. Our interpretation of that language, as the objective expression by plaintiff insurance company of the information it sought from an applicant for automobile liability insurance, leads us to conclude that there were no "omissions" at all, within the meaning of Section 2411, by the Rideouts, let alone "omissions" of such nature as, pursuant to Section 2411, would "prevent a recovery under the policy."

We stress, as the starting point of our analysis, that by its terms Section 2411 manifests a legislative purpose to protect insureds, to save them from forfeiting an insurance coverage afforded by the terms of an insurance policy because of the various deficiencies, or infirmities, that can readily arise when the average person, who cannot be expected to comprehend the intricacies of affording automobile liability insurance coverage, fills out an application form prepared by the insurance company. *See also* 7 *Couch on Insurance* 2d § 35.15.

It is with this legislative purpose of Section 2411 in mind that we evaluate whether the prepared language of plaintiff's application form informed the Rideouts as average readers, with reasonable specificity, *see Wardle v. International Health & Life Insurance Co.*, 97 Idaho 668, 551 P.2d 623 (1976),[3] that they were to provide the information plaintiff insurance company claims they failed to provide, thereby to be guilty of an "omission" within the contemplation of Section 2411.

■ In thus interpreting the language of the application form, we read the words to have the meaning given them by common usage. If ambiguities of meaning exist, they are to be resolved by a reasonable interpretation which is favorable to the insured, not only because of the purpose of Section 2411, as specially invoked here, to protect insureds but also on the basis of the general canon of interpretation that language drafted by an insurance company pertaining to matters involving insurance coverage will be construed most strongly against the insurer. *Johnson v. American Automobile Insurance Company*, 131 Me. 288, 161 A. 496 (1932).

Turning to the first space of the application form, that appearing under the heading "Operators of the Automobile(s)", we conclude that the language is ambiguous. We take it that the "automobile" referred to is the one giving rise to a need to apply for liability insurance protection. In the complexities of modern living, during the six month periods the insurance was to cover, that automobile might well be operated by many persons, depending on a variety of circumstances. The applicant for insurance could anticipate that particular persons would be highly likely as operators, others less likely, others remotely possible. With such the reality, what do the words "Operators of the Automobile(s)", signify with reasonable specificity to the average reader as to the kind of information he is to provide?

---

**3.** Compare, too, *Hebert v. State*, Me., 323 A.2d 1 (1974). In *Hebert* the controlling statute disqualified applicants for benefits for a *knowing* failure to disclose a material fact. Hence, there, the issue was whether an applicant for unemployment compensation *subjectively* understood the meaning of the Commission's question in order to be held accountable for failing to disclose information pertinent to a determination of eligibility for benefits. Although Section 2411(1) addresses a *fraudulent* omission or misrepresentation, which would also require subjective awareness of such omission, or misrepresentation, Sections 2411(2) and (3) do not appear to require a specific intention to misrepresent facts. Thus, we have formulated the inquiry, here, as the interpretation of the *objective* meaning of the language of the application form, that is, what would be conveyed with reasonable specificity to an average reader.

Is it expected that the applicant list every person who may be an "operator" of the automobile prompting the application of insurance, even if such person is not going to be a primary, usual, or frequent operator but one who, conceivably, might operate sporadically or on some particular occasion?

Similarly, with regard to the second space in the application form, that found under the heading "Accidents That Any Person, To Be Insured By This Application, Has Had", more particularly as it interrelates with the prior matter involving "operators", ambiguity arises.

■ In view of the overall purpose of the insurance policy being applied for, the abbreviated size of the application form, and the generality with which the questions on the application were phrased, we conclude that the applicants responded reasonably and completely by listing only themselves on the application form. Mr. & Mrs. Rideout applied for liability insurance coverage because they had acquired a second vehicle which was "principally" for use by Mrs. Rideout but would often be used by Mr. Rideout. At the time of the application, and as the Rideouts could reasonably project, the two of them were the household "family" for whose use this second automobile was acquired for "family" use. Ordinarily one taking out insurance for a "family" vehicle would name on the application those in the family household reasonably expected to drive. Insurers typically expect to be informed of the persons in the family household who are, or will soon become eligible, to drive. The application form evidences that expectation. Immediately following the section requesting information concerning "operators" is a section which requests the applicant to "List Below Those *Members Of Applicants Household* Over 12 Years Of Age, Not Listed *Above.*" (emphasis added) The juxtaposition of this latter section, which seeks information about *additional household* members, with the former section, which employs the general term "operators", would suggest to the average applicant, in light of the acquisition of an automobile which prompted the purchase of automobile liability insurance, that the former section sought *not* an exhaustive list of *all* potential drivers of that vehicle but, at most, only a listing of those household members who were legally qualified to operate it or of such persons, if not members of the household, who were expected to operate it with some degree of frequency or regularity. This interpretation is reinforced by the relatively small amount of space provided for listing "operators" in the former section (space for three names in addition to the applicant).

Similarly, when the second page of the application is viewed in its entirety, it is unreasonable to give the phrase "Person, To Be Insured By This Application" the broad interpretation assigned by the Superior Court. In a third category, on page two, the application form asks that the applicant supply all information about accidents in which any person "To Be Insured By This Application" has been involved. Space to write three names is provided. Following that section on the same page are several questions soliciting additional information about "person to be insured", and in each instance, the space for and scope of the expected answers is very limited. For example: "Has any person to be insured been required to file financial responsibility?"; "Does any person to be insured have any physical impairments or defects?"; and "Has any person to be insured ever been refused renewal, canceled or denied automobile insurance?" To each of the above questions, the applicant need only check "yes" or "no" in the box provided, and if "yes" is checked, give an explanation on the one line provided. It would seem that if the insurer expected to obtain meaningful data relating to all persons who might operate the automobile prompting the application for insurance, then not only should the application questions have been much more specific, but substantially more space should have been provided for answers. Again, when confronted with these questions, the average applicant would reasonably conclude that the insurer sought information pertaining to those individuals most likely to drive the insured vehicle with frequency or regularity.

At the time the application was submitted to and accepted by plaintiff insurance company, the Rideouts had no reasonable expectancy that their daughter, Ann, would use the insured vehicle frequently or regularly. Ann was not then "a resident of the Rideout household"; she was married and living with her husband in New Hampshire. This in itself would indicate that she would be likely to operate her parents' "family" automobile, if at all, only infrequently and sporadically. Nothing else appears in the evidence to suggest a contrary conclusion. That Mr. Rideout may have stated to the agent that he wanted his daughter Ann covered indicates, in the mobility of today's world, no more than the wish of a parent to assure coverage for adult children living elsewhere with their own households or families who, on an occasional visit to the home of their parent, might operate the parent's automobile. Indeed, the record before us shows that such a contingent anticipation is without significance in regard to the issuance of the automobile liability insurance policy here in question. Paul Ames, underwriter for plaintiff insurance company, testified:

"Q. Now, there would have been no relevance to classification in this case to the fact that the Rideouts had a married daughter living out of the household who had been involved in two accidents, would there?

"A. No, there would not.

"Q. And as a matter of fact if they had several married daughters living out of the household that have been in a lot of accidents, that wouldn't affect the classification, would it?

"A. No, it would not.

"Q. That's why you do not ask the questions?

"A. That's correct."

We conclude that in filling out the application form, the Rideouts were guilty of no "omissions" at all within the contemplation of 24–A M.R.S.A. § 2411.

*2.*

The next question to be addressed is whether the Rideouts had a duty to report to plaintiff insurance company the change in circumstances, occurring several months after the policy was in force, by which Ann became a "resident of the household" of the Rideouts.

■ Absent a special agreement, the insured who makes particular representations in the application for insurance is not obligated to inform the insurer of changes in circumstances occurring *after issuance of the policy* which are inconsistent with the representations in the application. *Preferred Risk Mutual Insurance Co. v. Hites,* 125 Ill.App.2d 144, 259 N.E.2d 815 (1970); *Preferred Risk Mutual Insurance Co. v. Anderson,* 277 Minn. 342, 152 N.W.2d 476 (1967); 7 *Couch on Insurance* 2d § 35.98 (Supp.1979).[4]

■ Here, then, the Rideouts had no obligation to report the change in Ann's circumstances to plaintiff insurance company. Moreover, we conclude that even though the instant policy was renewed twice in the time between its initial issuance and the collision, the truthfulness and completeness of the representations in the application relate to the time the original application was accepted. *See Zurich General Accident & Liability Insurance Co. v. Flickinger,* 33 F.2d 853, 856 (4th Cir. 1929); *Bennett v. Standard Accident Insurance Co.,* 209 Mo. App. 81, 237 S.W. 144 (1922).

Particularly in a case such as this one, where plaintiff insurance company makes no attempt to update its information prior to renewal and, as indicated in the record before us, relies on its agents to forward

---

4. Failure to disclose a material change in circumstances which occurs *between* the initial application and the issuance of the policy usually constitutes grounds for an insurer's avoidance of coverage under the policy. *Carleton v. Patrons' Androscoggin Mutual Fire Insurance Co.,* 109 Me. 79, 82 A. 649 (1912); *American Fire and Indemnity Company v. Lancaster,* 415 F.2d 1145 (8th Cir. 1969); *Carroll v. Preferred Risk Insurance Co.,* 34 Ill.2d 310, 215 N.E.2d 801 (1966); *MacKenzie v. Prudential Insurance Company of America,* 411 F.2d 781 (6th Cir. 1969); 7 *Couch on Insurance* 2d § 35:98.

such information of changed circumstances, it would be inconsistent with our conclusion that the insured has no duty to report changed circumstances to hold that such a duty existed with regard to pro forma renewals of an already issued, valid policy.

The entry is:

Appeal sustained.

Remanded to the Superior Court for entry of judgment declaring that under the automobile liability insurance policy at issue plaintiff insurance company was legally obligated to defend against suits, and was subject to legal liability for claims, arising out of the involvement in a collision on November 20, 1976 of an automobile operated by Ann Rideout, daughter of Marguerite Rideout.

NICHOLS, J., did not sit.