NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-281

UNITED FINANCIAL CASUALTY COMPANY

vs.

ANGELA N. BELL & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

United Financial Casualty Company (UFCC) filed suit for a declaratory judgment that it had no duty to indemnify its insured, Angela Bell, for claims brought against her by Ashley, Jonathan, and Cameron Wilson (together, Wilsons) following a motor vehicle accident. UFCC later moved for summary judgment, arguing that an exclusion in the policy, which it referred to as the "owned but not covered" exclusion, operated to bar coverage.[2] A Superior Court judge (first judge) denied UFCC's motion, concluding that the policy was ambiguous and that there was a

---

[1] Ashley Wilson and Jonathan Wilson, individually and as next friend of Cameron Wilson.

[2] Although the parties briefed additional issues below, the "owned but not covered" exclusion is the sole issue on appeal.

genuine issue for trial as to whether Bell committed fraud. After UFCC then stipulated that it had no evidence of fraud, the Wilsons moved for summary judgment. A second judge, declining to revisit the first judge's decision, allowed the Wilsons' motion, and judgment entered dismissing UFCC's complaint. UFCC appeals, arguing that the plain language of the policy entitles it to judgment as a matter of law. We agree and thus reverse.

Background. The material facts are not in dispute. On October 30, 2013, Bell was driving a 2011 Nissan Murano (Murano) when she was involved in a multivehicle accident in Wakefield. The Murano was owned by Bell's spouse, Ellen Helinski. Helinski had insurance for the Murano through Liberty Mutual Insurance Company (Liberty Mutual).

The Wilsons filed suit against Bell and Helinski for damages arising out of injuries that Ashley Wilson sustained in the accident. Liberty Mutual defended Bell and Helinski in that litigation. Eventually, Liberty Mutual settled the litigation by paying the Wilsons $250,000, the limits of the policy insuring the Murano.

At some point a dispute arose among the parties regarding whether the policy issued by UFCC to Bell provided excess coverage for the damages sustained by the Wilsons. The UFCC policy was in effect for six months beginning on June 25, 2013.

Bell was the named insured, and the only vehicle listed on the declarations page was a 2005 Hyundai Elantra owned by her. At the time she submitted her application, Bell was unmarried and living in Maine.

The policy contains a number of exclusions. At issue here is exclusion 11, which provides in relevant part that coverage does not apply to:

> "**bodily injury or property damage** arising out of the ownership, maintenance, or use of any vehicle owned by **you** . . . other than a **covered auto** for which this coverage has been purchased."

The term "you" is defined in the general definitions section of the policy as:

> "a.  a person shown as a named insured on the **declarations page**; and
>
> b.  the spouse of a named insured if residing in the same household at the time of the loss."

The term "covered auto" is defined in relevant part as "any **auto** . . . shown on the **declarations page** for the coverages applicable to that **auto**."

Bell and Helinski married in August 2013, during the policy period and before the accident involving the Murano. At the time of the accident, Bell and Helinski were living together in Maine. At no point after they married did Bell seek to add the Murano to the policy.

3

Discussion.  The interpretation of an insurance policy is a question of law, which we consider de novo.  See Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012).  The parties agree that the substantive law of Maine governs this dispute.

Under Maine law, if the language of a policy is unambiguous, the court must enforce its plain meaning.  See Graf v. State Farm Mut. Auto. Ins. Co., 149 A.3d 529, 532 (Me. 2016).  We agree with UFCC that the language of exclusion 11 is unambiguous and operates to bar coverage for Bell's accident while driving the Murano.  The exclusion applies to bodily injury or property damage arising out of the use of a vehicle owned by "you," other than a "covered auto."  It is undisputed that Helinski owned the Murano and that she fell within the policy's definition of "you" because she was "the spouse of a named insured [Bell] . . . residing in the same household at the time of the loss."  It is also undisputed that the Murano was not listed on the declarations page and so was not a "covered auto."  The exclusion thus unambiguously applies.

To the extent the defendants argue that the exclusion is ambiguous because the policy somewhat counterintuitively defines "you" to include a spouse, we disagree.  "An insurance policy is ambiguous only if an ordinary person would not understand that the policy did not cover certain claims."  Maine Mut. Fire Ins.

4

Co. v. Grant, 674 A.2d 503, 505 (Me. 1996) (Grant).  Here, the policy put Bell on notice, in "plain, specific, and understandable" language, that exclusion 11 would bar coverage if she was involved in an accident while driving a vehicle owned by a spouse living in the same household, unless that vehicle was insured under the policy.  Id. at 506.  Construing similar provisions in other policies, the Maine Supreme Judicial Court has found no ambiguity.  See Commercial Union Ins. Co. v. Alves, 677 A.2d 70, 72 (Me. 1996); Grant, supra.

In denying UFCC's motion for summary judgment, the first judge concluded that, while exclusion 11 unambiguously applied in these circumstances, there was a genuine factual dispute as to whether an ordinary person would "understand that a failure to notify the insurer about a change in marital status would trigger application of [e]xclusion 11 in a situation in which the exclusion had not applied at the time of the application for the policy."  The first judge focused on a provision of the policy that imposed on the insured a duty to report changes, including when "an operator's marital status changes," and another provision that allowed UFCC to deny coverage in cases of fraud or misrepresentation.  Reading these two provisions together, the first judge reasoned that "an ordinary person might well read the [p]olicy as excluding coverage for an

5

intentional, and therefore fraudulent, withholding of information but not from a good faith failure to update." The defendants rely on this reasoning on appeal, arguing that they are entitled to judgment as a matter of law because, absent fraud or misrepresentation, "the policy's required reporting of changes does not provide for denial of coverage as a consequence for a failure to report."

We are unpersuaded. The flaw in the defendants' argument is that it was the underlying change in Bell's marital status, and not her failure to report the change, that triggered application of exclusion 11. That is, even had Bell promptly updated her marital status, the exclusion would still have applied -- because the Murano would still be a vehicle owned by a spouse living in the same household as the insured -- unless additional coverage was purchased for the Murano, making it a "covered auto." Whether Bell reported the change in her marital status is thus immaterial to the applicability of the exclusion.

The Maine Supreme Judicial Court's decision in Patrons Mut. Ins. Co. v. Rideout, 411 A.2d 673 (Me. 1980) (Rideout), is not to the contrary. There, the policy provided coverage to "relatives" of the named insured, defined in relevant part as "any person 'related to the named insured by blood, . . . who is a resident of the same household.'" Id. at 675. When the

6

policy went into effect, the insureds' daughter was not a resident of their household, but she was such at the time she was involved in the accident for which coverage was sought. See id. While acknowledging that the policy's definition of "relatives" covered the daughter, the insurer argued that it nonetheless had no duty to indemnify because the insureds did not list the daughter on their application and did not update their information after she began living in their home. See id. at 675, 678. The court disagreed, concluding that the insureds did not misrepresent any facts on their application, see id. at 676-678, and that, "[a]bsent a special agreement," they had no obligation to inform the insurer of changes in their daughter's circumstances. Id. at 678.

This case is not comparable to Rideout. There, the insurer attempted to use the insureds' failure to report changes as a reason to void coverage that the insurer would otherwise be required to provide under the plain terms of the policy. Here, from the day the policy went into effect, Bell was on notice that it excluded coverage if she was involved in an accident while driving a vehicle owned by her spouse but not insured under the policy. By its plain language, the exclusion applies regardless whether Bell reported the change in her marital

7

status to UFCC.  We are obligated to enforce this plain language.  See <u>Graf</u>, 149 A.3d at 532.

<u>Conclusion</u>.  The judgment is reversed, and the matter is remanded to the Superior Court for entry of a declaration consistent with this memorandum and order.

<u>So ordered</u>.

By the Court (Blake, C.J.,
  Shin & Hand, JJ.[3]),

Clerk

Entered:  February 5, 2025.

---

[3] The panelists are listed in order of seniority.